## Campbell v. Industrial Union of Marine & Shipbuilding Workers of America et al.

*Wade Goble* and *Karl W. Johnson*, for plaintiff.

*M. H. Goldstein, Allen S. Olmsted, 2nd,* and *Joseph D. Calhoun,* for defendant union.

*Sylvan H. Hirsch* and *J. Allen Hodge*, for defendant employer.

MACDADE, P. J., September 11, 1944.—On June 5, 1944, plaintiff filed a bill in equity against these de-

fendants, averring therein that he had been unlawfully expelled from membership in the said union and that the shipbuilding company had unlawfully discharged him from its employment; therefore, praying for a preliminary injunction to enjoin and restrain the latter from dismissing him from its employment upon the demand of defendant union, dated May 1, 1944; and praying also for a preliminary injunction against defendant union, enjoining and restraining it from prosecuting its demand upon defendant company for his dismissal as aforesaid.

Apart from the employment situation, plaintiff also desires a decree that he is a member in good standing in defendant union insofar as the charges filed against him February 11, 1944, affect his standing in defendant union.

Eo die, injunction affidavits were presented and filed. The defendants were not in court. Whereupon, we granted a rule to show cause why such preliminary injunction should not issue, hearing thereon to be had June 9, 1944, and notice to be given defendants.

*At such hearing it was proved that the question of employment had become "moot"* because the company defendant had already discharged plaintiff from its employ at the demand of defendant union, in pursuance of a collective bargaining agreement entered into on November 15, 1943, between the Sun Shipbuilding & Dry Dock Company, one of defendants, and the Industrial Union of Marine and Shipbuilding Workers of America, Local 2, C. I. O., the other defendant, wherein article II, sec. 2, of said agreement reads as follows (see exhibit "G" attached to bill in equity) :

"2. The Union shall promptly furnish the company with a notarized list of its members in good standing as of the 15th day after the date of the execution of this agreement. If any dispute arises because any employee named on that list asserts that he withdrew from membership in the Union prior to that fifteenth

day, or if any dispute arises as to whether an employee is or is not a member of the Union in good standing, the question as to withdrawal or good standing, as the case may be, shall be adjudicated by the arbitrator to be appointed by the parties as provided in this Agreement, *whose decision shall be final and binding upon the Union, the employee and the Company.*" (Italics supplied.)

However, defendants contend under the circumstance of plaintiff being an employe of the company and therefore governed by the provisions of the collective bargaining agreement, referred to in paragraph 19 of plaintiff's bill in equity, he is, in accordance with the provisions of said agreement, bound by the decision of the arbitrator which the agreement specifically states shall be final and binding upon the union, the employe, and the company. Therefore, this decision cannot be appealed to or altered by a court of equity, since under the provisions of the acts of assembly of the State of Pennsylvania, and the decisions of our highest appellate courts, the decision of an arbitrator is final and may not be appealed from or be vacated by any court unless it is averred and proved that the award was procured by corruption, fraud, or undue means, or that there was partiality or corruption on the part of the arbitrator or that the arbitrator was guilty of misconduct or exceeded his powers. None of the foregoing conditions for equitable relief has been averred in the bill in equity filed. Therefore, under the decisions of the Supreme Court of Pennsylvania, the arbitrator's decision is final and unappealable.

This contention is supported by recent authority. See Seaboard Surety Co. v. Commonwealth, 350 Pa. 87, wherein the Supreme Court held the following (p. 90):

"Section 10 of the Act of 1927 provides that the court 'shall make an order vacating the award upon

the application of any party to the arbitration: . . . (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or any other misbehavior by which the rights of any party have been prejudiced'.

"An award may be properly set aside for misconduct of the arbitrators if after the hearings are at an end they receive testimony or evidence on behalf of one of the parties without notice to the other. This rule is generally qualified by the requirement that there has been no possibility of injury to the offended party. See 3 Am. Jur. pp. 933, 966, and *Curran v. Philadelphia,* 264 Pa. 111, 119. In *Berizzi Co. v. Krausz,* 239 N. Y. 315, 146 N. E. 436, it was held that the action of the arbitrator in making an ex parte investigation of his own prior to making the award constituted misconduct which warranted setting aside the award for the reason that the evidence adduced related to a fact in issue. Judge Cardozo said (p. 438): '. . . it [the evidence] was collected and acted upon without the knowledge of those affected and without opportunity to repel it . . .'

"It is not essential that the arbitrators intentionally and fraudulently committed the acts complained of. '. . . misbehavior, though without taint of corruption or fraud, may be borne of indiscretion': *Berizzi Co. v. Krausz,* supra, 437; *Seaboard Surety Co. v. Commonwealth,* supra 153. It is clear that the action of the arbitrators in securing an independent report on a matter at issue constitutes misconduct within the meaning of the arbitration act. It cannot be seriously contended that appellee was not injured as a result of the acts of the arbitrators. It was deprived of its right to cross-examine the state geologist and to adduce evidence to rebut his testimony. As said by Judge CARDOZO in *Berizzi Co. v. Krausz,* supra, 437,

'If misbehavior be assumed, we cannot doubt upon this record that prejudice resulted. The [appellee], knowing nothing of the evidence, had no opportunity to rebut or even explain it.' "

The question of employment being moot, we formally entered the following order, as follows:

"And now, to wit, June 9, 1944, a rule having been granted by the court on the 5th day of June, 1944, upon the above-named defendants, to show cause why a preliminary injunction should not issue, which rule was returnable June 9, 1944, and the matter having this day come on to be heard, the said rule is hereby discharged."

This, therefore, leaves the prayer of plaintiff for us to decree him to be a member in good standing in the defendant union insofar as the charges filed against him February 11, 1944, affect his standing in the defendant union. This obliges the parties to go to a *final* hearing unless by preliminary motions such may be stayed or avoided for want of cause of action.

In passing we may state that ordinarily in determining one's status as a member of an organization, whether in a church, lodge, or union, there are certain procedural steps for one to pursue to exhaustion under rules and regulations within the organization before the courts will review any alleged wrongs, real or fancied. That may sometimes be excused by reason of arbitrary or high-handed conduct of the trial board or arbitrator, but the present case is not ripe as yet for a final determination with respect thereto, because this plaintiff by a bill of discovery is endeavoring through court process to obtain that which he deems necessary to obtain from the defendant union to assist him, in good conscience and equity, in properly and fairly prosecuting his appeal or appeals. We understand that he has done so with respect to the decision of the trial board about whose alleged unfair conduct at the trial and whose subsequent concealment of the testimony he is complaining.

Here is the plaintiff fighting for reinstatement, so that he may peaceably pursue his chosen vocation and the God-given right to labor untrammeled, which he is denied by defendant union, under its rules and regulations, by alleged "unfair" practices which cannot be done at common law to conspire to prevent a man from being lawfully employed. However, that is not the immediate issue for decision, but it will be ultimately. Here is a preliminary skirmish to prepare for the real battle—the right to membership in defendant union and to have employment with the defendant company without denial by the former. The preliminaries may be long drawn before a final decision, because of such rules and regulations and from the technical objections to be made from time to time, before the matter can get into the courts. It would seem that the whole procedure by reason of delay strikes at the foundation of sound economy and family solidarity. Are a man and his dependents to be deprived in the meanwhile of a livelihood at any place to support his family from the sweat of his brow and the labor of his hands because it is alleged preliminarily that his misconduct proves him unworthy of membership in a particular organization? According to defendant union's rules there is no supersedeas pending an appeal. That is contrary to sense and justice. In most proceedings in this Commonwealth, a supersedeas is allowed pending appeal, and is even extended to criminals. This plaintiff cannot work at present anywhere where the influence of the C. I. O. can be exercised. Perhaps the evil of this case can be corrected by legislation to compel furnishing to an expelled member a copy of the trial proceedings, which this plaintiff is denied pending his appeal. This latter does not smack of justice and fair dealing and is most arbitrary. Surely we must not set up in America that which we condemn in other countries with their purges, to be thus penalized for expressing divergent views. That is tyranny and not liberal democracy.

In Sun Ship Employes Association against the same defendant as herein, December term, 1943, no. 540, in equity, we said:

"The right of labor to organize for mutual aid and protection to better their condition in the matter of wages and other incidental benefits has long been recognized by the courts and legislature of this Commonwealth. See Jefferson & Indiana Coal Co. v. Marks, 287 Pa. 171, 175. The court said in that case, page 176: 'Labor unions are therefore not only legitimate but, because their aim and purpose is to better the living conditions of a large part of the body politic, they are a necessary part of the social structure.' See also American Steel Foundries v. Tri-City Central Trades Council et al., 257 U.S. 184, 209."

If "unfair" practices prevail within a union, they should circumvent its object so as to make its existence useless as a factor in social life tending to better "living conditions of a large part of the body politic" or as a very much needed agency for employment when manpower is scarce and we necessarily need the help of all to win the war, to get out vital production: Kirmse et al. v. Adler et al., 311 Pa. 78.

On July 14, 1944, we (per Sweney, P.), upon petition, granted a rule upon defendant, Industrial Union of Marine and Shipbuilding Workers of America, Local 2, C. I. O., to show cause why it should not furnish plaintiff with a true and correct copy of the record made in the trial of plaintiff's case before defendant union trial board on March 1, 1944, March 8, 1944, March 23, 1944, March 28, 1944, and April 4, 1944, conformable to Equity Rule 35 of the Supreme Court, returnable July 28, 1944.

On July 6, 1944, prior to the granting of this rule, defendant union filed an answer raising preliminary objection to the bill in equity and, on June 29, 1944, the company defendant filed an answer raising preliminary objections, all of which are set down for

hearing at our argument court on September 18th next.

To plaintiff's petition for rule, supra, to produce certain records under Equity Rule 35, defendant union filed an answer on July 28, 1944, denying the right of plaintiff to have the records produced before trial, it being conceded that under Equity Rule 60 such could not be produced at trial; that the case not being at issue he is not entitled to a production of the record, conceding, however, that by the terms of Rule 35 such papers may be produced "which are necessary to enable plaintiff properly to *prepare his bill*". Plaintiff's bill is not complete and we subsequently permitted him on July 28, 1944, to amend paragraph 3 of his petition for a rule to show cause why defendant, Local 2, I. U. M. W. A., should not produce certain records by the addition of the words in line 1 thereof "*to amend his bill and*".

### Questions to be determined

A. Should the court direct defendant union to produce a copy of the records made before the union trial board on March 1, 1944, March 8, 1944, March 23, 1944, March 28, 1944, and April 4, 1944?

B. Is the court's power to make absolute a rule for the production of such records affected by the transmission of both copies of that record to the General Executive Board of the Union in Camden, N. J.?

### Discussion

A. An examination of the bill filed by plaintiff in this case will indicate that the basis of his suit is the allegation that he did not have a fair and impartial trial before the union trial board as guaranteed to him by the union constitution and bylaws. Although he was able to set forth in his bill certain errors and improprieties of the trial board in paragraphs 6 to 12, inclusive, of the bill, it is plaintiff's contention that there were many other errors committed by the trial

board during the five sessions at which plaintiff's case was heard and that he should be permitted to amend his bill to include all the errors and improprieties committed by the trial board upon the hearing of his case.

It is obvious that if plaintiff cannot amend his bill as to other and further errors committed by the trial board he will not be permitted at the trial of this cause to introduce evidence thereof. Nor is it reasonable to require the plaintiff to base his case upon his recollection of a long-drawn-out series of hearings which extended from March 1 to April 4, 1944, at which a large volume of testimony was taken and during the course of which many rulings with respect to the admissibility of evidence and other rulings of various kinds were made by the trial board.

The general application of Equity Rule 35 of the Supreme Court is considered in 8 Pa. Standard Practice, §200. It is held that an application under this rule is in the nature of a bill of discovery and that courts have favored such bills in proper cases (*a*) to *obtain facts to enable the plaintiff to prepare his bill or statement*, (*b*) to make preparation for the trial of a case, and (*c*) to save delays and promote a proper and orderly trial. Plaintiff's petition for the rule filed July 14th specifically sets forth that plaintiff requires the records for the purpose of amending his bill and preparing his case for trial. Section 200 above referred to contains some cautions as to the allowance of such a petition, none of which has application to the instant case. Bills of discovery have been regarded with favor by our courts for many years: Lesser v. Henry, 50 Pa. Superior Ct. 440; Bains v. Goldey, 35 Pa. 51; and Mac-Connell v. Safe Deposit & Trust Co. et al., 65 Pitts. L. J. 439. The production of this record is a legitimate one for the purpose of this case. Plaintiff has filed his petition setting forth that the record, testimony, etc., are necessary and pertinent to the issue. The testimony taken on August 11th, plus the admission made in defendant union's answer, indicates with-

out question that a production of that record would not require defendant union to make improper disclosures of its private affairs or in any way constitute an infringement upon defendant union's privacy.

It appears to be the position of defendant union that the record now sought by plaintiff is a matter of testimony which plaintiff may be entitled to demand upon trial of the case but which he may not now lawfully demand to be produced. The inequity of that position must be obvious. Plaintiff has already explained his necessity with respect to this record. His present request for an examination of the record is not for the purpose of obtaining testimony with which to bolster his case but for the purpose of setting forth in his bill all the errors and improprieties committed by the union trial board. It has already been pointed out that if plaintiff is prevented from setting forth all the errors committed by the union trial board he will be prevented from introducing evidence in respect thereto and if in this instance defendant union is not required to produce the record requested it may very well suppress sufficient errors of the trial board to defeat plaintiff's action.

Plaintiff's petition in this instance is in no sense a fishing expedition but it is a request for substantial and pertinent matter which he is entitled at least to inspect.

B. As to the second question to be considered by the court, its authority to make an order under the circumstances, in which defendant has attempted to put out of its control all existing copies of the record, to permit such an act by defendant to be effective would in effect amount to defendant's taking advantage of its own wrong. The testimony shows that the record was in quarter sessions court of this county on June 21, 1944. Jascourt, president of defendant union, says he took office about July 1, 1944. He testified that he did not send the record to the general executive board.

Miss Schultz, the union stenographer, testified that she never wrote any letter transmitting the record. There is nothing before the court to indicate why the general executive board would need two copies of the record, which defendant admits were sent to that board for the purpose of considering plaintiff's appeal. Even if we concede that the general executive board might need one copy of the record there is no reason why it should need two copies. It is open to question whether the general executive board should need any copy of the record. Since the taking of testimony on August 11, 1944, this plaintiff has received a letter from the general executive board indicating that his appeal would be heard on August 30, 1944. This letter further indicates that the appeal will be in the nature of a trial de novo. If that be so, there is no real necessity why the general executive board should need any copy of the record made before the union trial board.

By reference to this letter (Plaintiff's Exhibit "A"), we note the following: "If you have any written testimony, documents or exhibits which you are contemplating on submitting to the committee, it is highly desirable that three copies be prepared for the committee." That is absurd. How can plaintiff produce such when they deny him the record, including the testimony, etc.?

There is nothing in the record to indicate that, upon an order by this court for the production of a copy of a record sought by plaintiff, defendant union could not obtain at least one copy from the general executive board. The fact alleged by defendant union that both copies of the record are not in its possession should not be allowed to weigh where the evidence produced on August 11, 1944, indicates that at least one copy of the record was in possession of the union at a trial held before the quarter sessions court of this county as late as July 21, 1944. It is proper for this court to make an order upon defendant for produc-

tion of the requested record under Equity Rule 35 of the Pennsylvania Supreme Court, and the authority of the court to make such an order upon defendant union is not affected by the alleged transmission of all existing copies of the record to its general executive board in Camden, N. J.

Defendant union has control of this record and can produce it, for it has shown same by its own admission: Small et al. v. Smith et al., 294 Pa. 163.

Proceedings under Equity Rule 35 give the right of discovery of papers "which are necessary to enable plaintiff properly to prepare his bill". The purpose of discovery is to enable plaintiff to state sufficient facts to make out a cause of action, not to supply him with the details of proof: 27 C.J.S. Discovery, §12; The Barrett Co. v. Tank Car Corp. of America et al., 42 D. & C. 500; Tomlinson Co., Inc., v. Tatlow, 19 D. & C. 398; Young, Admr., v. Bradford County Telephone Co., 346 Pa. 90.

See Judge Bard's opinion filed on July 19th interpreting Rule 34 of the Federal Rules of Civil Procedure relative to the production of documents in advance of trial in VanZant v. American Exp. Co. (civil action no. 3441).

*Decree*

And now, September 11, 1944, the above matter of plaintiff's rule, as amended, against the Industrial Union of Marine and Shipbuilding Workers of America, Local No. 2, C. I. O., an unincorporated association, to show cause, if any there be, why the said defendant should not furnish plaintiff with a true and correct copy of the record made at the trial of plaintiff's case before defendant union's trial board on March 1, 1944, March 8, 1944, March 23, 1944, March 28, 1944, and April 4, 1944, conformable to Equity Rule 35 of the Pennsylvania Supreme Court, be and is hereby made absolute sec. reg. et. sec. leg.